UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) No. 22-cr-00028 (TSC) | |
| NICHOLAS LATTANZI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF SENTENCING**

Mr. Nicholas Lattanzi ("Lattanzi"), by and through undersigned counsel respectfully submits this memorandum in support of sentencing and, for the reasons articulated below, requests that the Court impose a sentence of 24 months' probation and order a $500 restitution payment.

**FACTS OF CASE**

Defendant traveled alone via automobile from his home in Millsboro, De. to the Washington, D.C. metropolitan area sometime in the evening of January 5, 2021 in advance of a rally to be held on January 6, 2021 by President Donald J. Trump.

Lattanzi made plans to stay with a friend ("Person-1" in the Government's filings) near Bethesda, Md. on January 5 on the night prior to the then-president's January 6 rally and speech near the White House. The defendant drove by himself from Maryland to the District of Columbia where he parked at a public garage prior to making his way on foot from the parking facility to the Secret Service security screening area near The Ellipse (Lattanzi furnished financial transaction receipts from the parking garage to the F.B.I. showing his times in and out of the parking structure on January 6).

1

Lattanzi queued up in a security screening area approximately two hours prior to Mr. Trump's scheduled speech; he passed through the check point in order to be searched and screened by law enforcement personnel before gaining admission to the audience area near The Ellipse. The defendant was not found to be in possession of weapons or other prohibited items before being admitted to the location of the president's rally.

The defendant stayed for the entirety of Mr. Trump's speech and was moved to walk over to the Capitol complex by the president's directive to "march over to the Capitol," however, he made certain stops along the route from the White House to the Capitol, including a visit to the Washington Monument where he gathered for pictures with friends he knew from social media interactions.

At about 2:30 p.m., Lattanzi walked toward the Capitol with a group of friends but he was separated from this group and ended up by himself at some point along the way. He was by himself when he got to the Capitol, long after police barricades had either been knocked over or removed from his path toward the building.

Lattanzi's description of his actions in, near and inside the Capitol track identically to the discovery materials turned over to the defendant in this matter, that is, Lattanzi did not touch or deface any police officer, the defendant did not push up against police lines or police officers and he entered the building "like a tourist" as described by one unidentified Capitol P.D. officer during the course of an internal affairs interview.

Lattanzi's entry into the building through an open door in the Senate wing of the Capitol at approximately 3:22 p.m. on January 6 was captured by surveillance cameras installed near the entry door used by the defendant to get inside the building. These hallway cameras corroborate the defendant's story to law enforcement on April 21, 2021 about entering through an open door,

moving with a crowd for a short distance, his encounter with a Capitol P.D. officer, Lattanzi's apparent submission to a lawful order to leave the building and his presence inside the Capitol for around five minutes.

Upon information and belief, Lattanzi is the only January 6 defendant charged thus far whose consistent story to law enforcement regarding his role in this event has been corroborated both by a neutral and detached witness interviewed by the F.B.I. (Person-1) and the video footage furnished by the Government to the defendant in discovery.

## STATUTORY AND GUIDELINE ANALYSIS

**Statutory Penalties**

Lattanzi signed a plea agreement dated August 4, 2022 to enter a guilty plea to Count Four of the Information, that is, Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 *U.S.C.* § 5104(e)(2)(G). The defendant acknowledged his understanding that this violation of 40 *U.S.C.* § 5104(e)(2)(G) carries a maximum sentence of six months' imprisonment; a term of probation not to exceed five years pursuant to 18 *U.S.C.* § 3561(c); a maximum fine of $5,000 pursuant to 18 *U.S.C.* § 3571(b)(6); and an obligation to pay applicable interest or penalties on fines and restitution not tendered in a timely fashion.

The defendant understands that the sentence in this matter will be determined by the Court pursuant to the factors set forth in 18 *U.S.C.* § 3553(a) and further acknowledges that a violation of 40 *U.S.C.* § 5104(e)(2)(G) is a class B misdemeanor as defined in 18 *U.S.C.* § 3559(a)(7). As such, pursuant to § 1B1.9 of the United States Sentencing Commission's *Guidelines Manual*, the sentencing guidelines do not apply to this case. Factors specified in 18 *U.S.C.* § 3553(a) mandate that the sentencing court "impose a sufficient sentence, but not

greater than necessary, to comply with" federal sentencing goals and objectives. The "sufficient" sentencing factors will be explored below.

1. **The nature and circumstances of the offense and defendant characteristics**

Lattanzi's January 6, 2021 conduct prior to and subsequent to the Capitol breach is undisputed. He attended a rally at the White House after being screened for weapons; Lattanzi heard the president encourage his followers to march to the Capitol; he stopped at the Washington Monument for group photos with some Internet friends; Lattanzi walked from the Washington Monument to the Capitol area with others but became separated from his group on the way; he arrived at the Capitol about one hour after the building breach; he entered the building through an open door; and he *immediately* followed a lawful command to exit the Capitol as instructed by a law enforcement officer less than five minutes after his entry.

Lattanzi's conduct may also be contrasted with other protesters in that he engaged in none of the following acts or speech: Lattanzi did not engage in violence or any form of property destruction; he did not confront or fight with the police; he entered no offices nor did he make his way to the Senate or House floors; he did not remove mementos or souvenirs; Lattanzi did not possess any dangerous weapons; he did not encourage the crowds to break through police lines; and he did not travel with or associate with any organization or an extremist group.

The Government generally sets out several factors for the Court's sentencing consideration, to wit: (i) whether, when and how the defendant entered the Capitol; (ii) whether the defendant engaged in any destructive acts; (iii) whether the defendant engaged in or incited any acts of violence; (iv) his reaction to acts of violence or property destruction; (v) whether during or after the riot the defendant destroyed any evidence; (vi) the amount of time the defendant spent inside the building; (vii) the defendant's statements (in person or on social

media); (viii) whether the defendant cooperated with or ignored law enforcement; and (ix) whether the defendant demonstrated remorse or contrition for his actions. (Please note that at the time of this memorandum's filing, the defendant had not yet received the Government's formal sentencing recommendation as it is under review at the U.S. Department of Justice but counsel have conferred regarding A.U.S.A. Zachary Phillips's likely proposal.)

With respect to the first sentencing factor, a review of Lattanzi's statement to law enforcement as well as discovery documents and videos turned over to the defendant showed that Lattanzi made a peaceful entry into the Capitol more than one hour after the breach (by others). He broke no windows or doors and is not alleged to have touched or assaulted any personnel guarding the building.

The defendant did not engage in or incite any violence according to a review of the discovery in this case, including audio and video evidence that likely would have captured any assault or incitement to violence.

The record is clear that the defendant did not engage in any form of destruction or criminal mischief.

The Government found no audio, video or social media posts regarding a positive reaction to acts of violence and/or property destruction.

Lattanzi denied that he destroyed any evidence of criminality, in fact, he turned over certain clothing items and also consented to a search of his phone at the time of arrest in January 2022. These voluntary acts would conflict with any suspicion or allegation of spoilation of evidence.

The Government also normally asks the Court as a matter of routine in its sentencing recommendations that have been published to consider the length of a defendant's time inside the

5

Capitol as one of the relevant factors to be considered in crafting a just sentence. This specific issue is likely the strongest point the defendant may put forward in aid of his argument for a probation sentence as his stay inside the building is either the shortest or among the shortest of those charged in the January 6 riot. According to a review of statements of fact and statements of offense published by the U.S. Department of Justice in these case, the average times inside the building for defendants ranged from ten to 40 minutes, far in excess of Lattanzi's approximate five minute incursion into the Capitol.

The defendant's posted social media statements are protected by the First Amendment and he should not be punished for any unpopular opinions as they are sacrosanct under our laws.

Lattanzi cooperated with law enforcement authorities beginning on January 6, 2021 up until the present day; he, unlike nearly every other defendant in this matter, immediately exited the Capitol when instructed to do so by a police officer. He has made himself available on short notice for interviews and always complied with requests to surrender his property for examination by the Government. Lattanzi met with the F.B.I. twice in April of 2021 and then appeared for reinterview twice in November of 2022.

2. **Lattanzi's history and characteristics**

Lattanzi is a 25 year old single male who was born in Michigan but has resided in Delaware since early childhood. He currently works at Baywoods Greens, a Millsboro, De. public golf course, as a groundskeeper's assistant. During the pretrial supervision phase of the instant case, he complied with all conditions of release and, in so doing, demonstrated clearly that he is amenable to complying with this Court's instructions if he were to be sentenced to probation. Those who know Lattanzi describe him as: "polite, helpful, and faithful at church" (Haley letter); "up at the crack of dawn to make it to work each day" (the defendant's parents);

(possessing) "a big heart" (Meredith letter); and (an individual who) "admitted that his actions were unwise. He has also acknowledged the harm that this has inflicted and a desire to correct this behavior in the future" (Peper letter). Please see Exhibit A for the full text of these character letters.

   3. **Seriousness of offense, respect for law and just outcome**

Any conviction arising out of the events of January 6, 2021 is very serious, especially in view of the milieu from which this conviction arose, however, Lattanzi has demonstrated a commitment to a rules based lifestyle and is a believer in law and order. In fact, he has been open to a plea agreement since the time he first contacted counsel in April of 2021 and signed the Government's agreement immediately upon receiving the offer. His early acceptance of responsibility saved a costly and unnecessary potential trial. A sentence of imprisonment in this matter could impact his employment status and may act as a disincentive to future criminal defendants to cooperate fully and immediately with the F.B.I., other federal law enforcement agencies and with Department of Justice prosecutors.

Lattanzi avers to the Court that a just sentence in this case would be probation and he relies upon the most recent summary of cases in which the Government recommended a probation sentence without home detention for an identical conviction offense to illustrate his assertions. See Case 1:21-cr-00543-CRC, Document 59-1. While the Government's exact sentencing recommendation is unknown to the defense at this time, Lattanzi submits that the facts and circumstances of his matter are fairly comparable to the offenses detailed in Document 59-1. The five most recent sentences imposed pursuant to a Government probation recommendation involved four defendants who were in the company of other rioters. The fifth defendant from this sentencing cohort entered the Capitol more than one hour prior to Lattanzi's

7

brief incursion into the Capitol. Any actors who were accompanied by others should be viewed as in a separate category from Lattanzi as companions could necessarily push each other to further acts of defiance, property damage and potential violence. The other sole actor profiled in Document 59-1 could be considered part of the breach's vanguard while Lattanzi is properly viewed as a follower who made a serious mistake but was not in any leadership position. Four of these five defendants received probation sentences and one defendant received a 14 day period of incarceration. See *U.S. v. Bissey*, 1:21-cr-00165-TSC. Lattanzi's offense differs in a considerable manner in that the *Bissey* defendant was charged with a friend, she made certain bragging representations concerning her acts on social media sites and she stayed in the Capitol twice as long as Lattanzi.

4. **Deterrence and public safety considerations**

Lattanzi has been free of criminal conviction up until this case and has led an otherwise exemplary life of service to his family, his church and his community. With the exception of his poor decision making on January 6, 2021, he has been a model citizen with no apparent substance abuse or mental health issues. The likelihood of this person reoffending is extremely low in view of the unique circumstances of January 6; his history provides no indication of any future danger to our society.

5. **Need for treatment and training**

Lattanzi is not a user of controlled substances or alcohol by personal choice not related to any treatment program or condition of pretrial release. No substance abuse or mental health treatment or monitoring provisions appear to be necessary as a part of this defendant's future success.

6. **Available sentences and applicable sentencing ranges**

The Parading in a Capitol Building offense, 40 *U.S.C.* § 5104(e)(2)(G) carries a maximum sentence of six months' imprisonment and a fine of no more than $5,000. Lattanzi agreed to pay restitution in the amount of $500 as well as an administrative fee pursuant to his plea agreement. A period of probation of up to five years applies in this case.

7. **Need to avoid sentencing disparities**

Upon information and belief, the Government will recommend some period of incarceration in its sentencing memorandum, however, the defendant posits that a prison sentence in his matter could lead to an inequitable sentencing result in light of his brief, non-violent entry, his exit upon police command, his multiple interviews with the F.B.I. and his early acceptance of responsibility.

8. **Need to pay restitution**

Lattanzi has the means to pay his agreed upon restitution of $500.

## CONCLUSION

Lattanzi takes full and complete responsibility for his actions on January 6, 2021 and recognizes that he is subject to punishment for his acts within the Capitol on that day, however, his acts on January 6 should not be conflated with those who assaulted the police, engaged in destruction or acted in concert with others to delay or stop the certification process. Lattanzi's conduct on January 6 does not merit incarceration in view of his age, solo travel to D.C., travel alone from the White House to the Capitol and very short time in the building.

Lattanzi respectfully requests that in light of the § 3553(a) factors detailed above, the Court impose a 24 month probation sentence as sufficient but not greater than necessary punishment for his actions.

Respectfully submitted,

/s/ *Jeffery P. McLane*
Jeffery P. McLane
McLane Law, LLC
De. Bar ID #6183
17527 Nassau Commons Blvd., Suite 103
Lewes, De. 19958
(302) 448-5946
jeff@mclane.law
*Pro Hac Vice*

/s/ *Charles R. Haskell*
Charles R. Haskell
Law Offices of Charles R. Haskell, P.A.
641 Indiana Ave. NW
Washington, D.C. 20004
(202) 888-2728
charles@charleshaskell.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2022 I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

Dated:   November 29, 2022                         /s/ Charles R. Haskell
                                                    Charles R. Haskell

10