UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:22-cr-0028-TSC |
| v. : | |
| : | |
| NICHOLAS JOHN LATTANZI, : | |
| : | |
| Defendant : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Nicholas Lattanzi to 30 days incarceration, 36 months probation and $500 in restitution.

**I.    Introduction**

Defendant Nicholas Lattanzi, a 25-year-old landscaping and irrigation technician, participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars' in losses.[1]

Lattanzi pleaded guilty to one count of violating 40 USC § 5104(e)(2)(G). As explained herein, a sentence of 30 days incarceration, 36 months probation and $500 in restitution is

---

[1] Although the Statement of Offense in this matter, filed on August 30, 2022, (ECF No. 23 at ¶ 6) reflects a sum of more than $1.4 million dollars for repairs, as of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $ $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

1

appropriate in this case because Lattanzi entered the Capitol through a door with an obviously broken window where numerous police officers were gathered to turn the rioters away. Additionally, Lattanzi was aware of the violence that took place on January 6, 2021. He possessed a flag on January 6 that he admitted was stained with blood and a chemical irritant (mace) stains during the riot. Additionally, Lattanzi falsely denied entering the Capitol when first interviewed by the FBI, but later admitted to the agents that he had entered the building.

The Court must also consider that Lattanzi's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts of and circumstances of Lattanzi's crime support a sentence of 30 days incarceration, 36 months probation and $500 in restitution in this case.

**II.     Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 23 (Statement of Offense), at 1-3. As this Court knows, a riot cannot occur without rioters, and each rioter's actions—from the most mundane to the most violent— contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to Brooks' conduct and behavior on January 6.

*Defendant Lattanzi's Role in the January 6, 2021 Attack on the Capitol*

On January 5, 2021, Nicholas Lattanzi traveled to Washington, D.C., from his home in Millsboro, Delaware to attend the "Stop the Steal" rally. On his way there, Lattanzi posted on his TikTok page a photograph of a highway with the caption, "DC BOUND," and "Anyone else gonna be at the rally tomorrow?" *See* Figure 1, below.

appropriate in this case because Lattanzi entered the Capitol through a door with an obviously broken window where numerous police officers were gathered to turn the rioters away. Additionally, Lattanzi was aware of the violence that took place on January 6, 2021. He possessed a flag on January 6 that he admitted was stained with blood and a chemical irritant (mace) stains during the riot. Additionally, Lattanzi falsely denied entering the Capitol when first interviewed by the FBI, but later admitted to the agents that he had entered the building.

The Court must also consider that Lattanzi's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts of and circumstances of Lattanzi's crime support a sentence of 30 days incarceration, 36 months probation and $500 in restitution in this case.

**II.     Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 23 (Statement of Offense), at 1-3. As this Court knows, a riot cannot occur without rioters, and each rioter's actions—from the most mundane to the most violent— contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to Brooks' conduct and behavior on January 6.

*Defendant Lattanzi's Role in the January 6, 2021 Attack on the Capitol*

On January 5, 2021, Nicholas Lattanzi traveled to Washington, D.C., from his home in Millsboro, Delaware to attend the "Stop the Steal" rally. On his way there, Lattanzi posted on his TikTok page a photograph of a highway with the caption, "DC BOUND," and "Anyone else gonna be at the rally tomorrow?" *See* Figure 1, below.



*Figure 1*

Lattanzi attended the former President's rally and joined a group of other people there. At 10:45 a.m. on January 6, Lattanzi posted a selfie photograph with the caption, "Met up with the BOOOYYYYYSSSS." He posted another photo on Tik Tok at 10:46 a.m. that showed Lattanzi posing with several other people, presumably the "BOOOYYYYYSSSS." (Figures 2 and 3)

 

*Figure 2*                                                          *Figure 3*

After attending the former President's rally, Lattanzi made his way to the Northwest side of the Capitol Building. The scene there was one of chaos. Officers had actively defended their position for over an hour and were outnumbered and under continuous assault from the thousands of rioters. The rioters first entering the Capitol through the Senate Wing Door at around 2:13 p.m.

At approximately 3:22 pm., Lattanzi joined the mob entering into the Capitol through the Senate Wing Door on the Northwest side of the Capitol. Lattanzi is identified with a red arrow in

4

Figure 4, and can be seen wearing a cowboy hat, a white skull print gator pulled up over his mouth and nose and carrying a white flag.



*Figure 4*

After entering the Capitol, Lattanzi turned right and began walking south, down a hallway, toward the Crypt. (Figures 5 and 6)

 

*Figure 5*  *Figure 6*

As Lattanzi made his way down the hallway of the Capitol, a uniformed officer put his hand in the air and directed Lattanzi and others out of the Capitol. Lattanzi turned and walked back to the Senate Wing Door where he eventually exited the Capitol at approximately 3:27 pm. (Figure 7)



*Figure 7*

Lattanzi spent approximately 5 minutes inside the Capitol along with other rioters.

*Lattanzi's Initial Post-Arrest Interview with the FBI*

On April 5, 2021, Lattanzi was arrested and interviewed by FBI agents. Lattanzi was shown screenshots from TikTok and Lattanzi admitted he appeared in the screen shots and was in Washington on January 6, 2021.

Lattanzi advised the FBI agents that he traveled to Washington D.C. on the morning of January 6, 2021 and stayed there for one day. Lattanzi stated that his intent in traveling to

Washington D.C. was to "support my President."  Lattanzi claimed he did not bring any items with him to the rally such as weapons, shields, or restraints.  Lattanzi advised FBI agents that the Capitol Building was targeted because, "We were betrayed by the people who represent us." Lattanzi went on to say that things turned violent because, "Mike Pence and Republicans turning on us."

Lattanzi lied to the FBI agents that he did not enter the Capitol and he did not know how or why certain areas or individuals inside the Capitol were targeted by the rioters.

*Lattanzi's Second Post-Arrest Interview with the FBI*

The following day, April 6, 2021, the FBI was contacted by counsel for Mr. Lattanzi and counsel advised that Lattanzi wished to amend the statement he had made to agents the prior day.  On April 21, 2021, FBI agents interviewed Lattanzi a second time. During his second interview, Lattanzi admitted to entering the Capitol through an open door which had a broken window.

Lattanzi advised the FBI that while he was inside the Capitol, a uniformed officer instructed Lattanzi to leave the Capitol and Lattanzi exited the Capitol through the same door which he had entered.  Lattanzi was then shown a picture of a white flag with black lettering and a green tree. The flag had dark spots and stains on it.  Lattanzi admitted to the FBI that the flag depicted in the photo belonged to him and that the stains on the flag were blood and "mace" (a chemical irritant similar to tear gas) which got on the flag during the January 6, 2021 riot.  (Figure 8)



*Figure 8*

*The Charges and Plea Agreement*

On January 10, 2021, the United States charged Nicholas John Lattanzi by criminal complaint with violating 18 U.S.C. § 1752(a)(1), Count One; 18 USC § 1752(a)(2), Count Two; 40 USC § 5104(e)(2)(D), Count Three; and 40 USC § 5104(e)(2)(G), Count Four.  On April 5, 2021, law enforcement officers arrested him in Millsboro, Delaware.  On January 20, 2022, the United States charged Lattanzi by a 4-count Information with violating 18 USC § 1752(a)(1), 18 USC § 1752(a)(2), 40 USC § 5104(e)(2)(D), and 40 USC § 5104(e)(2)(G). On August 30, 2022, pursuant to a plea agreement, Lattanzi pleaded guilty to Count Four of the Information, charging him with a violation of 40 USC § 5104(e)(2)(G).  By plea agreement, Lattanzi agreed to pay $500 in restitution to the Department of the Treasury.

### III.   Statutory Penalties

Lattanzi now faces a sentencing on a single count of violating 40 USC § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Lattanzi faces up to six months of imprisonment and a fine of up to $5,000. Lattanzi must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.   Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days incarceration and $500 in restitution.

#### A.   The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Lattanzi's

participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Lattanzi, the absence of violent or destructive acts is not a mitigating factor. Had Lattanzi engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Lattanzi's offense is that he entered the Capitol through a door which clearly had a broken window. Further, Lattanzi was well aware of the violence and struggle taking place between rioters and the police because he possessed a flag inside the Capitol that had been stained by blood and mace during the riot.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 30 days incarceration, 36 months probation and $500 in restitution.in this matter.

### B. The History and Characteristics of Lattanzi

As set forth in the PSR, Nicholas Lattanzi does not have a criminal history and has close relationships with his parents and other family members.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law.

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the

democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The sentence in this case should also specifically deter Lattanzi from similar criminal conduct in the future. His TikTok posts, as well as those of associates in which he appears, showed Lattanzi smiling and appearing to enjoy himself while violence and rioting was taking place all around him. A sentence of incarceration is necessary to convince Lattanzi the January 6, 2021 riot was not an event to be celebrated or repeated.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Lattanzi based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Lattanzi has pleaded guilty to Count Four of the Superseding Information, charging him with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar

---

[2] Attached to this supplemental sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

13

records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

In *United States v. Hemenway*, 21-cr-00049, the defendant, much like Lattanzi, entered the Capitol while observing officers in riot gear as well as recognizing that violence was prevalent at the Capitol during the riot. Like Lattanzi, Hemenway treated the chaos and disorder around him as an entertaining spectacle and posed for a selfie-style photograph in a mob of people inside the Capitol with his middle finger raised. Like Lattanzi, Hemenway remained inside the Capitol for a brief period of time – approximately 17 minutes, although unlike Lattanzi, Hemenway made his

way into the Crypt, where police officers were being attacked. After exiting the Capitol, Hemenway celebrated the breach while standing atop a military type of vehicle. Lattanzi celebrated by displaying a flag which contained blood and mace stains. Hemenway admitted to his actions only a few days after the riot and accepted responsibility by pleading guilty and expressed remorse for his actions. Unlike Lattanzi, however, Hemenway has a serious criminal history involving a conviction for Sexual Battery. This Court sentenced Hemenway to 45 days' incarceration with no subsequent term of supervision.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

V.     **Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 30 days incarceration and $500 restitution. Such a sentence protects the community, promotes respect for the law, and

deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

                              Respectfully submitted,

                              MATTHEW M. GRAVES
                              United States Attorney
                              D.C. Bar No. 481052

By:    s/ *Zachary Phillips*
        Assistant United States Attorney
        CO Bar No. 31251
        Capitol Riot Detail
        United States Attorney's Office, Detailee
        1801 California Street, Suite 1600
        Denver, CO 80202
        Telephone: (729) 281-1611
        Zachary.phillips@usdoj.gov

**CERTIFICATE OF SERVICE**

On this 2nd day of December, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

<div style="text-align:right">

s/ *Zachary Phillips*
Assistant United States Attorney
CO Bar No. 31251
Capitol Riot Detail
United States Attorney's Office, Detailee
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: (729) 281-1611
Zachary.phillips@usdoj.gov

</div>